IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:11-CV-53-D

| | |
|---|---|
| JAMES A. STURDIVANT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, plaintiff James A. Sturdivant ("plaintiff") challenges the final decision of defendant Commissioner of Social Security ("Commissioner") denying his application for a period of disability and disability benefits ("DIB") on the grounds that he is not disabled. The case is before the court on the parties' respective motions for judgment on the pleadings. (D.E. 32, 34). Both parties submitted a memorandum in support of their respective motions (D.E. 33, 35). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* D.E. 36). For the reasons set forth below, it will be recommended that plaintiff's motion be allowed, the Commissioner's motion be denied, and this case be remanded for further proceedings.

I.  BACKGROUND

   A.  Case History

Plaintiff filed an application for DIB on 2 April 2008, alleging a disability onset date of 31 October 2007. Transcript of Proceedings ("Tr.") 12. His application was denied initially, and again upon reconsideration, and a request for hearing was timely filed. *Id.* On 9 December 2009, a video

hearing was held before an Administrative Law Judge ("ALJ"). *Id.* 24-61. The ALJ issued a decision denying plaintiff's claim on 23 March 2010. *Id.* 12-23. Plaintiff timely requested review by the Appeals Council. *Id.* 8. The Appeals Council denied the request for review on 4 January 2011. *Id.* 1-3. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 404.981. Plaintiff commenced this proceeding on 28 February 2011 seeking judicial review pursuant to 42 U.S.C. § 405(g) (D.E. 1).

**B.    Standards for Disability**

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The Act goes on to describe the attributes an impairment must have to be disabling:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(2)(A).

The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The burden of proving disability falls upon the claimant. *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993).

The disability regulations under the Act ("Regulations") provide the following five-step

analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R. § 404.1509], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["listings"] . . . and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

3

### C. Findings of the ALJ

Plaintiff was 42 years old on the alleged onset date of disability and 44 years old on the date of the administrative hearing. *See* Tr. 17 ¶ 7. He has a high school education. *Id.* 17 ¶ 8.

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ made the finding at step one that plaintiff had not engaged in substantial gainful activity since 31 October 2007, the alleged onset date. *Id.* 14 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments which were severe within the meaning of the Regulations, 20 C.F.R. § 404.1520(c): chronic pain syndrome in the knees, legs, and back; carpal tunnel syndrome; and numbness in the legs. Tr. 14 ¶ 3. At step three, however, the ALJ found that plaintiff's impairments did not meet or medically equal any of the listings. *Id.* 15 ¶ 4.

The ALJ determined that plaintiff had the RFC to perform light work subject to only occasional climbing, balancing, kneeling, crouching, and crawling, and frequent, but not constant, handling. *Id.* 15 ¶ 5. Based on this RFC, the ALJ found at step four that plaintiff could not have performed any past relevant work. *Id.* 17 ¶ 6.

At step five, based on plaintiff's RFC and the vocational factors of his age, education, and previous work experience, the ALJ found that there were a significant number of jobs in the national economy that plaintiff could perform, including nut and bolt assembler, inspector, and small product assembler. *Id.* 18 ¶ 10. The ALJ relied on the testimony of a vocational expert in making this finding. *Id.* The ALJ accordingly found plaintiff not disabled during the relevant period. *Id.* 18 ¶ 11.

## II.  DISCUSSION

### A.  Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See, e.g.*, *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*).  In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979).  A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

### B. Overview of Plaintiff's Contentions

Plaintiff contends that the ALJ's decision should be reversed because the ALJ failed: (1) to adequately consider plaintiff's mental impairments and (2) to properly evaluate certain medical source opinion evidence.

### C. Evaluation of Plaintiff's Mental Impairment

The record contains evidence relating to plaintiff's mental health. On 27 March 2008, he reported to a physician that he had occasional suicidal thoughts, albeit not very serious, and the physician indicated that he would refer plaintiff to a psychiatrist. Tr. 435, 436. On 24 April 2008, plaintiff expressed similar complaints to another physician, and the physician noted plaintiff as having depression. *Id.* 298, 300. On 6 April 2009, plaintiff complained to yet another physician that he was losing his temper on a regular basis and had frequent mood swings with depression, but no mania. *Id.* 461. The physician diagnosed him with depressive bipolar affective disorder and prescribed medication for it. *Id.* 462.

In his decision, the ALJ acknowledged that plaintiff was claiming disability due to depression, but found that he never sought counseling or any other mental health treatment, was never hospitalized for depression or any other mental disorder, and was prescribed only anti-

6

depressants for the problem. *Id.* 16-17 ¶ 5. He then stated the following: "I therefore find insufficient evidence to establish a disability due to depression. Thus, the claimant's depression is 'not severe' as defined in the Regulations."[1] *Id.* 17 ¶ 5.

Plaintiff contends that the ALJ's decision shows the ALJ did not adequately consider his depression in making the RFC determination. The court agrees, although on somewhat different grounds.

The court reads the ALJ's decision as determining plaintiff's depression to be an impairment since the finding that the depression was not severe presumes it to be an impairment. *See* 20 C.F.R. § 404.1521(a). When the ALJ determines that a claimant has a medically determinable mental impairment, the Regulations require the ALJ to follow a special technique to evaluate such impairments, as described in 20 C.F.R. § 404.1520a(b)-(e). 20 C.F.R. § 404.1520a(a). Under the special technique, an ALJ is to rate the degree of a claimant's functional limitation in four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). The first three functional areas are rated on a five-point scale: none, mild, moderate, marked, and extreme. *Id.* § 404.1520a(c)(4). A four-point scale is used to rate the fourth functional area: none, one or two, three, and four or more. *Id.* The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity. *Id.*

---

[1] The quoted language can be interpreted as stating that because plaintiff's impairment was not disabling it was also not severe. Such a deduction is invalid because the standard for disability is much higher than that for severity. *Compare* 20 C.F.R. § 404.1527(a)(1) (disability standard) *with id.* § 404.1521(a) (non-severity standard). That is, an impairment can readily be severe without being disabling. The decision on remand should make clear that no such deduction is being made.

7

The ALJ was also required to document in his decision his application of the special technique. *Id.* § 404.1520a(e). Specifically, an ALJ's written decision "must incorporate the pertinent findings and conclusions based on the technique" and "must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." *Id.* § 404.1520a(e)(2). The decision must also include a specific finding as to the degree of limitation in each of the four functional areas. *Id.*

Here, the ALJ does not provide the ratings required by the special technique. Nor does he cite to the underlying regulation or otherwise reference his obligation to apply the special technique. In the absence of documentation that the ALJ applied the special technique as required, the court concludes that he failed to do so.

To be sure, portions of the ALJ's decision indicate that he gave some consideration to plaintiff's limitations in functional areas addressed by the special technique. But these portions of the decision are no substitute for the ratings required by the Regulations. Plaintiff did not receive the benefit of the full evaluation of his mental impairments that the special technique requires.

For example, the ALJ found that "there is no evidence of significant limitation on the claimant's ability to understand; to remember and carry out simple instructions; make simple work-related decisions; deal with changes in a routine work setting; and respond appropriately to supervision, coworkers and usual work situations." Tr. 17 ¶ 5. But this determination addresses only partially the functional areas encompassed by the special technique. It also fails to show that the ALJ made the type of refined analysis of the functional areas addressed that the special technique compels.

8

Where the claimant has presented a colorable claim of mental impairment, as here, the failure to incorporate the special technique into the ALJ's decision warrants remand for further proceedings. *Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005); *Witt v. Barnhart*, 446 F. Supp. 2d 886, 898 (N.D. Ill. 2006). Therefore, the ALJ's failure to apply the special technique requires remand of this case.

D. **Evaluation of Medical Source Opinions**

Independent of the ALJ's failure to apply the special technique, the court finds, as plaintiff contends, that the ALJ did not adequately evaluate opinions of at least two of his treating physicians. He also failed to properly address other medical source opinions. The court begins its analysis with a review of applicable legal principles.

Opinions of physicians who have treated a claimant are generally accorded more weight than the opinions of physicians lacking a treatment relationship. 20 C.F.R. §404.1527(d)(2). The reason is that the treating sources are likely to be those "most able to provide a detailed, longitudinal picture of . . . [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). Indeed, the Regulations provide that opinions of treating physicians on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. R. 96-2p, 1996 WL 374188, at *2 (2 July 1996). If the medical opinions of the treating source are not given controlling weight, the

9

Regulations prescribe factors to be considered in determining the weight to be ascribed, including the length and nature of the treating relationship, the supportability of the opinions, their consistency with the record, and any specialization of the provider. 20 C.F.R. § 404.1527(d)(2)-(6). Significantly, an ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. R. 96-2p, 1996 WL 374188, at *5; *see* 20 C.F.R. § 404.1527(f)(2)(ii).

Similarly, the opinions of physicians who examine a claimant are generally entitled to more weight than those of physicians who did not perform an examination. *See* 20 C.F.R. § 404.1527(d)(1), (2); Soc. Sec. R. 96-6p, 1996 WL 374180, at *2 (2 July 1996). The weight ultimately attributed to medical opinions of nonexamining sources depends on the same factors, to the extent applicable, used to evaluate the medical opinions of treating sources. 20 C.F.R. § 404.1527(f). In addition, if applicable, the status of the nonexamining source as a state agency medical consultant or medical expert used by the Commissioner is to be considered. 20 C.F.R. § 404.1527(f). Unless the treating source's medical opinions are given controlling weight, the ALJ must explain in his decision the weight given to the opinions of nonexamining sources as he must do for treating source opinions. 20 C.F.R. § 404.1527(f)(2)(ii). Notably, however, opinions from medical sources on the ultimate issue of disability and other issues reserved to the Commissioner are not entitled to any special weight based on their source. *See* 20 C.F.R. § 404.1527(e).

The court finds that the ALJ violated these standards in his decision. The medical source opinion evidence at issue includes the opinion of one of plaintiff's treating physicians, James

McLeod, M.D., as of 8 December 2008 that plaintiff needed powered mobility equipment (*i.e.*, a power wheelchair) to move from room to room in his home due to limited endurance and other impairments. Tr. 432-33; *see also id.* 538 (note of treating physician George D. Veasy, M.D. stating his willingness to fill out forms for a scooter for plaintiff). The form containing the opinion is attached to a document that appears to be a prescription for a power wheelchair for plaintiff. *Id.* 434. The ALJ does not discuss Dr. McLeod's opinion or even cite to the document containing it (Ex. 23F).

Referring to plaintiff, Dr. Veasy stated on 26 August 2008 that "[t]here is no job that is a sedentary job that he can return to." *Id.* 487. The ALJ does not address this opinion either. Although the Commissioner argues that the ALJ was clearly addressing the unavailability of jobs at plaintiff's then place of employment, the Commissioner's interpretation is obviously no substitute for that of the ALJ and an explanation of the weight the ALJ accorded the opinion.

Other medical source opinion evidence includes the physical RFC assessments of two state agency consulting physicians, one dated 2 May 2008 (*id.* 301-08) and the other 6 October 2008 (*id.* 381-88). The ALJ devotes two sentences to this evidence.

He first mentions it in support of his finding at step three of the sequential analysis that plaintiff's impairments do not meet or medically equal any listing. He states: "In reaching this conclusion, I also considered the opinion of the State Agency medical consultants who evaluated this issue at the initial and reconsideration levels of the administrative review process and reached the same conclusion." *Id.* 15 ¶ 4. He provides no explanation for his agreement with their conclusion.

11

He turns again to this evidence in making his RFC determination after step three. There he states: "As for opinion evidence, I agree with the opinion of the Medical Consultants of the Disability Determination Service in that the claimant has no evidence of any impairment severe enough to prevent him from performing all types of work activity." *Id.* 17 ¶ 5. Again, he offers no statement of reasons why he is relying on the consulting physicians' assessments.

Left unexplained is why his level of reliance is so minimal. In effect, he says he is relying on the assessments only to the extent that they determined plaintiff not to be disabled. The assessments, of course, go much further than that, one finding plaintiff capable of medium work with no limitations (*Id.* 301-08) and the other light work with postural limitations (*Id.* 381-88). The ALJ's statement suggests, curiously, that he gave no more weight to the latter assessment finding plaintiff capable of light work, even though he too found plaintiff capable of such work with the same postural limitations.

The ALJ does, of course, provide in his decision a discussion of medical and other evidence. But this discussion does not satisfy the ALJ's obligation to state and explain the weight he gave the medical source opinions.

The court stresses that on remand the Commissioner needs to use care in analyzing and setting out his analysis of the weight he gives to the opinions of the various medical sources. As the foregoing authorities require, the explanation should be sufficiently specific "to make clear" to plaintiff and any subsequent reviewers the weight given each opinion and the reasons for such weight. Soc. Sec. R. 96-2p, 1996 WL 374188, at *5; *see* 20 C.F.R. § 404.1527(f)(2)(ii).

## III. CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's motion for judgment on the pleadings be ALLOWED, the Commissioner's motion for judgment on the pleadings be DENIED, and this case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Recommendation.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have 14 days to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

This, the 31st day of January 2012.

James E. Gates
United States Magistrate Judge